UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JOHN DOE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 8:23-cv-00456 |
| FLORIDA HEALTH SCIENCES CENTER INC. d/b/a Tampa General Hospital, | ) ) ) | (<u>PUTATIVE CLASS ACTION</u>) |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM

### I.      INTRODUCTION

In violation of the applicable court rules, Plaintiff sued Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("TGH") under a pseudonym without seeking leave of court.  At the same time, he freely pled the names of routine surgeries that he underwent at TGH: (A) without any apparent reason to do so from a pleading standpoint, (B) without knowing whether the court would grant him leave to proceed under a pseudonym if he were to move for it, and (C) without making any effort to use tools that were available to him under the applicable court rules to shield the names of the surgeries from public view.

Plaintiff now claims that he cannot proceed under his real name because it would associate him with the names of the surgeries that he freely chose to insert

into the record.  This Court should deny him leave to proceed under a pseudonym because: (A) he has failed to satisfy his burden to establish a substantial privacy right that outweighs the presumption of judicial openness; and (B) even if he had satisfied his burden, and even though he offers to disclose his name privately, he still must proceed under his real name as a putative class representative.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed this case in Hillsborough County Circuit Court on January 19, 2023.  (Dkt. 1-1).  He claims that TGH "improperly disclosed to Meta Platforms, Inc. ('Meta') his protected health information ('PHI') and other personally identifiable information ('PII'), such as his IP address, name, email, or phone number, by incorporating the 'Meta Pixel' on the TGH website."  (Dkt. 38 at 1). He also claims that he "received targeted advertisements relating to his medical conditions and treatments for which he was treated for [sic] at TGH."  Id. at 7.

Florida Rule of Civil Procedure 1.100(c)(1) required the caption of Plaintiff's Complaint to contain "the name of all of the parties."  Florida Rule of General Practice and Judicial Administration 2.420(e)(1), however, permitted him to move to determine that all or any portion of his Complaint was confidential.

Plaintiff wholly disregarded Rule 1.100(c)(1) by proceeding under a pseudonym without leave of court.  At the same time, without seeking any form of protection under Rule 2.420(e)(1), he freely pled the names of the following

2

routine surgeries that he underwent at TGH: "gastro by-pass surgery, LAP-Band surgery, and gallbladder removal" (the "Routine Surgeries"). (Dkt. 1-1, ¶ 11). Plaintiff does not explain why he pled the names of the Routine Surgeries, which he nowhere specifies as information that TGH allegedly disclosed to Meta.

TGH removed this case to this Court on March 1, 2023. (Dkt. 1). Plaintiff continued to proceed under a pseudonym without seeking leave of court, even though the plaintiff in the partially consolidated case of <u>Carlsen v. Florida Health Sciences Center, Inc.</u>, No. 23-cv-559 (M.D. Fla.) has proceeded under his real name ever since he filed suit on January 27, 2023. (Carlsen Dkt. 1-1).

TGH first challenged Plaintiff's use of a pseudonym without leave of court in its motion to dismiss on March 8, 2023. (Dkt. 8 at 22). TGH, however, filed an answer on March 27, 2023, (Dkt. 10), which resulted in the denial of its motion to dismiss as moot on April 26, 2023, (Dkt. 22 at 2). TGH then moved to compel Plaintiff to seek leave to proceed under a pseudonym on May 3, 2023, (Dkt. 26), and Plaintiff finally moved for such leave on May 17, 2023, (Dkt. 38).

## III.   STANDARD OF REVIEW

Like Florida Rule of Civil Procedure 1.100(c)(1), which Plaintiff violated when he filed suit, Federal Rule of Civil Procedure 10(a) states: "The title of the complaint must name all the parties." "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts

involved, including the identities of the parties." <u>Doe v. Frank</u>, 951 F.2d 320, 322 (11th Cir. 1992). To proceed under a pseudonym, the plaintiff must establish "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." <u>Id.</u> at 323.

The plaintiff bears the "burden to establish, in the first instance, that [his or her] privacy rights outweigh the presumption of judicial openness." <u>In re: Chiquita Brands Int'l, Inc.</u>, 965 F.3d 1238, 1247 (11th Cir. 2020). The court must "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." <u>Frank</u>, 951 F.2d at 323 (emphasis in original).

> A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.

<u>Id.</u> at 324. A plaintiff who otherwise would be "required to disclose information of the utmost intimacy" may be entitled to proceed under a pseudonym. <u>Id.</u> at 323. Nevertheless, the fact that the plaintiff "may suffer some personal embarrassment, standing alone, does not require the granting of his request." <u>Id.</u> at 324.

## IV.   ARGUMENT

This Court should deny Plaintiff leave to proceed under a pseudonym because: (A) he has failed to satisfy his burden to establish a substantial privacy right that outweighs the presumption of judicial openness; and (B) even if he had

satisfied his burden, and even though he offers to disclose his name privately, he still must proceed under his real name as a putative class representative.

**A.  Plaintiff has failed to satisfy his burden to establish a substantial privacy right that outweighs the presumption of judicial openness.**

Plaintiff has failed to satisfy his burden to establish a substantial privacy right that outweighs the presumption of judicial openness because: (1) the Routine Surgeries are not matters of the utmost intimacy, and (2) contrary to Plaintiff's assertion, there would be no chilling effect if this Court were to deny the Motion.

1.   The Routine Surgeries are not matters of the utmost intimacy.

The fact alone that Plaintiff freely pled the names of the Routine Surgeries, instead of leaving them out or following court rules that could have permitted him to shield them from public view, vitiates his claim that they are matters of the utmost intimacy.  In all events, Plaintiff's fear that his name will be associated with the Routine Surgeries is not a valid basis for proceeding under a pseudonym.

In Benjamin K. v. United Healthcare Servs., Inc., No. 20-1466, 2021 WL 2916711, at *2 (M.D. Fla. Jan. 15, 2021), the plaintiff "simply argue[d] that he [was] entitled to maintain the privacy of his protected health information."  The court, acting *sua sponte*, denied him leave to proceed under a pseudonym, ruling:

> '[T]he fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems.' '[A] medical issue . . . , although sensitive and private, 'is not such a badge of infamy or humiliation in the modern world that its presence

should be an automatic ground for concealing the identity of a party to a federal suit.' 'Absent such stigma, the claim for privacy based upon a medical issue must be waived when one chooses a public forum to settle a private dispute.'

Id. at *1 (citations omitted).

In Frank, the court ruled that the plaintiff's alcoholism was insufficient to justify proceeding under a pseudonym. 951 F.2d at 324. In Tracey P. v. Sarasota County, No. 05-cv-927, 2006 WL 8440206, at *1 (M.D. Fla. Nov. 3, 2006), the court ruled that the plaintiff's "substance abuse and recovery" was insufficient.

In Doe v. Pentax of America, Inc., No. 12-1171, 2012 WL 3128968, at *1 (M.D. Fla. Aug. 1, 2012), the court ruled that the plaintiff's HIV status was insufficient, even though the motion was unopposed. Plaintiff, however, relies on S.G. v. Mears Transportation Group, Inc., No. 14-cv-917, 2014 WL 4637139, at *1 (M.D. Fla. Aug. 12, 2014), in which the court granted the plaintiff's unopposed motion for leave to proceed under a pseudonym based on his HIV status.

In Doe v. University of Miami, No. 12-23933, 2012 WL 12960871, at *2 (S.D. Fla. Nov. 28, 2012), the court denied a motion for leave to proceed under a pseudonym where the plaintiff alleged "that he was kicked out of Defendant UM's medical school because of behavioral problems related to ADHD and other unspecified mental disorders." The plaintiff sought to rely on a case involving HIV status, but the court ruled that ADHD is "insufficiently stigmatizing." Id.

Although not cited by Plaintiff, in <u>Alexandra H. v. Oxford Health Insurance, Inc.</u>, No. 11-23948, 2012 WL 13194941, at *1 (S.D. Fla. Mar. 23, 2012), the court granted the plaintiff leave to proceed under a pseudonym where her psychiatrist "submitted a sworn statement that '[her] treatment involved very serious and sensitive mental health issues which if publicized in connection with her identity would embarrass and shame [her], and seriously jeopardize [her] recovery.'"

Here, to the extent that Plaintiff would suffer from any stigma whatsoever if his name were associated with the Routine Surgeries, which he nowhere suggests, any such stigma would be infinitely lesser in degree than: (a) the associations with substance abuse in <u>Frank</u> and <u>Tracey P.</u>, (b) the associations with mental illness in <u>University of Miami</u> and <u>Alexandra H.</u>, or (c) the associations with HIV in <u>Pentax</u> and <u>S.G.</u>  This court thus should follow <u>Benjamin K.</u> where, as here, the plaintiff "simply argue[d] that he [was] entitled to maintain the privacy of his protected health information," and deny the Motion.  2021 WL 2916711, at *2.

The other Florida federal cases relied upon by Plaintiff are far afield from this case, and most of them ruled on unopposed motions.  In <u>M.J. v. Jacksonville Housing Authority</u>, No. 11-cv-771, 2011 WL 4031099, at *1 (M.D. Fla. Sept. 12, 2011) (unopposed motion), the plaintiff feared associating his name with juvenile criminal records.  Here, Plaintiff does not suggest that criminal activity is at issue.

Strike 3 Holdings, LLC v. Doe, No. 3:19-cv-508, 2019 WL 5722173, at *1 (M.D. Fla. Nov. 5, 2019) (unopposed motion) involved a party's association with pornography.  Florida Abolitionist, Inc. v. Backpage.com LLC, No. 17-cv-218, 2018 WL 2017535, at *1 (M.D. Fla. May 1, 2018) (unopposed motion) and Doe v. Rickey Patel, LLC, No. 19-cv-2414, 2020 WL 9073327, at *1 (M.D. Fla. Mar. 4, 2020) (no response filed to motion) involved plaintiffs who were sex trafficked as minors.  Here, Plaintiff does not suggest that sexual activity is at issue.

In Navy Seal 1 v. Austin, 21-cv-2429, 2022 WL 520829, at *1 (M.D. Fla. Feb. 18, 2022), the plaintiffs were opponents of military COVID-19 vaccine mandates.  They moved for leave to proceed under pseudonyms not just based on the "privacy of their medical and health information," but also based on "the privacy of their religious beliefs and practice, as well as the prospect of 'stigma, ostracization, retaliation, and other harms,' including threats of violence."  Id.

This Court granted the motion only because the "action encompasse[d] substantially more intimate detail than whether a person chose to accept a vaccine."  Id.  For example, this Court reasoned that one plaintiff "received an abortion after suffering a rape and later – through her religious devotion – believe[d] herself forgiven, according to her beliefs, for the sin of abortion."  Id.

This Court further reasoned that "statements and incidents cited by the plaintiffs adequately demonstrate, and everyday experience in recent weeks and

8

months confirm[ed], an acrid public atmosphere of contention about masks, vaccines, mandates, and the like." Id.  Thus, this Court ruled that the disclosure of the plaintiffs' names would "enable those who – through 'social media,' as well as more immediate mechanisms – intimidate, harass, and defame." Id. at *2.

Similarly, in Doe v. Neverson, 820 F. App'x 984, 984 (11th Cir. 2020), the plaintiff sued a famous recording artist for sexual assault.  She claimed that "proceeding under her real name would bring great shame to her and her family due to their religious beliefs, as well as subject her to online bullying and harassment." Id. at 984-85.  She supported her claim with a declaration detailing her religious background and various online threats against her.  Id. at 985-96.

Here, unlike in Navy Seal 1 and Neverson, Plaintiff does not suggest that his religious beliefs are at issue, nor does he suggest that he is under any threat of violence, intimidation, bullying, harassment, or anything else along those lines.

The out-of-state federal cases relied upon by Plaintiff are also unpersuasive. In Doe v. Franklin Bank, S.S.B., No. 08-CA-293, 2008 WL 11334179, at *2 (W.D. Tex. Sept. 3, 2008), the plaintiff alleged that his employer created an intolerable work environment, which caused him to resign, after improperly reviewing his medical information.  The plaintiff moved for leave to proceed under a pseudonym because "additional public disclosure of [his medical] information could affect his dealings with future employers." Id. at *4.  The court granted him such leave

because "the reaction of his former employer to the revelation of the matters indicates the matters are both significant and sensitive."  Id. at *3.

Similarly, in Roe v. Catholic Health Initiatives Colorado, No. 11-cv-2179, 2012 WL 12840, at *4 (D. Colo. Jan. 4, 2012), the plaintiff moved for leave to proceed under a pseudonym because "public dissemination of her disability and its treatment could jeopardize future employment opportunities."  The information at issue included information regarding "Plaintiff's sexual activities, including the number of her sexual partners," and "illegal drug use."  Id. at *3.

In Doe v. Provident Life & Accident Ins. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997), the court granted the plaintiff leave to proceed under a pseudonym because "being identified as suffering from a mental illness" would have brought about "great risk that plaintiff will be stigmatized in his professional life" as an attorney.

The plaintiffs in Franklin Bank, Catholic Health, and Provident Life all had compelling reasons to believe that their associations with their medical information would cause them to suffer from stigmas that would harm their professional lives. Here, Plaintiff does not suggest that he will suffer from any stigma whatsoever.

Finally, in Doe v. ProHealth Care, No. 23-cv-0296, 2023 WL 2760644, at *1 (E.D. Wis. Apr. 3, 2023), the court granted the plaintiff's **unopposed** motion for leave to proceed under a pseudonym.  It based its ruling not on an individualized

determination of the strength of the plaintiff's privacy right, but on a generalized, speculative statement by the Department of Health and Human Services ("HHS"):

> [A]n impermissible disclosure of PHI **may** result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI.

Id. (emphasis added).

Plaintiff misinterprets ProHealth in two ways that suggest that the court made an individualized determination of the strength of the plaintiff's privacy right when it did not.   First, he quotes as part of the court's "holding" that the "publication of [the plaintiff's] real name alongside any of his improperly released PII and PHI **would** make him a prime target" for various harms.  (Dkt. 38 at 2 & 7) (emphasis added).  That quote, however, was part of the court's recitation of the plaintiff's position, not the court's holding.  ProHealth, 2023 WL 2760644, at *1.

Second, Plaintiff mistakes the court's observation that the HHS statement "**suggests the potential for** a high degree of harm if Doe is not allowed to proceed anonymously" for a firm ruling that "there **is** a 'high degree of harm if Doe is not allowed to proceed anonymously.'"  Id.; (Dkt. 38 at 2) (emphasis added to both).

Unlike in ProHealth, Florida federal courts have adjudicated unopposed motions for leave to proceed under pseudonyms only after making individualized determinations of the strength of plaintiffs' privacy rights.  E.g., Pentax, 2012 WL 3128968, at *1 (HIV status – unopposed motion denied); S.G., 2014 WL 4637139,

at *1 (HIV status); <u>M.J.</u>, 2011 WL 4031099, at *1 (criminal activity); <u>Strike 3</u>, 2019 WL 5722173, at *1 (pornography); <u>Fla. Abolitionist</u>, 2018 WL 2017535, at *1 (sex trafficking); <u>Rickey Patel</u>, 2020 WL 9073327, at *1 (same).

In all events, <u>ProHealth</u> is entirely unpersuasive where, as here, the Motion is opposed.  Plaintiff fails to explain: (a) how injuries that theoretically **could** result from disclosure of health information actually **would** result from associating his name with the Routine Surgeries; or (b) how he is entitled to relief when he freely pled the names of the Routine Surgeries, instead of leaving them out or following court rules that could have permitted him to shield them from public view.

    2.    <u>Contrary to Plaintiff's assertion, there would be no chilling effect if this Court were to deny the Motion.</u>

Plaintiff relies on <u>In re. Anthem, Inc. Data Breach Litigation</u>, No. 15-md-02617, 2016 WL 11505231 (N.D. Cal. Apr. 8, 2016) to argue that "disclosure would have a chilling effect on pursuing these types of claims."  (Dkt. 38 at 3). <u>Anthem</u> did not involve pseudonyms.  2016 WL 11505231, at *1.  To the contrary, <u>Anthem</u> was a putative class action regarding a healthcare industry data breach, in which the plaintiffs were "named."  <u>Id.</u>  There, the court denied the defendant's motion to compel access to the plaintiffs' personal electronic devices, stating:

> There is an Orwellian irony to the proposition that in order to get relief for a theft of one's personal information, a person has to disclose even more personal information, including an inspection of all his or her devices that connect to the internet.  If the Court were to grant Anthem's request, it

would further invade plaintiff's privacy interests and deter current and future data theft victims from pursuing relief.

Id. at *1.

Anthem is inapposite.  TGH opposing Plaintiff's use of a pseudonym is much less intrusive than the defendant in Anthem seeking access to the plaintiffs' personal electronic devices, and thus much less likely to have a chilling effect.  In fact, here, denying the Motion would have the salutary effect of encouraging parties to future litigation to follow the court rules that Plaintiff violated.

Plaintiff also relies on language from Frank listing as one variety of the "exceptional cases" in which a court might grant leave to proceed under a pseudonym, cases in which "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity."  951 F.2d at 323-24.

Apart from ProHealth, which illustrates nothing more than a Wisconsin federal court setting a low bar for granting an **unopposed** motion, two of the cases cited by Plaintiff relied on the "injury litigated against" rationale.  First, in M.J., the injury litigated against was the dissemination of juvenile criminal information, which resulted in the termination of the plaintiff's housing assistance.  2011 WL 4031099, at *1.  Second, in Catholic Health, a Colorado federal case, the injury litigated against was the dissemination of medical information regarding sexual activity and illegal drug use in violation of the Americans with Disabilities Act, which resulted in employment termination.  2012 WL 12840, at *1 & *3.

13

Thus, in both <u>M.J.</u> and <u>Catholic Health</u>: (a) the information at issue was inherently stigmatizing; (b) the dissemination of such information caused severe, life altering "injuries litigated against;" and (c) associating the plaintiffs' real names with the same information during the course of the litigation stood to cause the plaintiffs to suffer more injuries like the "injuries litigated against."

Here, none of that is true.  First, Plaintiff nowhere suggests that any of the information at issue is stigmatizing at all.  Second, the "injury litigated against" is limited to: (a) the fact itself of the alleged disclosure to Meta, and (b) the alleged receipt of targeted advertising.  Those injuries are infinitely less severe than the loss of housing assistance in <u>M.J.</u> and loss of employment in <u>Catholic Health</u>**.** Third, associating Plaintiff's name with the Routine Surgeries would be unlikely to result in injury, and any such injury would be self-inflicted because Plaintiff freely pled the names of the Routine Surgeries, instead of leaving them out or following court rules that could have permitted him to shield them from public view.

Nevertheless, Plaintiff grasps at straws to imagine three speculative injuries that he might suffer, without even beginning to substantiate any of them:

a.      Plaintiff speculates that proceeding under his real name "could affect his relationship and dealings with his medical providers at TGH and elsewhere," but does not explain how or why.  (Dkt. 38 at 3).  Logically, it would seem appropriate for his medical providers to know about the Routine Surgeries.

b.     Plaintiff speculates that he could receive more targeted advertising, but again does not explain how or why.  Id. at 7.  Logically, it would seem unlikely that this Court's litigation records would be a fruitful place for advertisers of healthcare services to mine for information to use to target their advertising.

c.     Plaintiff speculates that unspecified third parties "**may** use" his "information" for "medical identity theft," but yet again does not explain how or why.  Id. (emphasis added).  Logically, it would seem unlikely that the association of Plaintiff's name with the Routine Surgeries would result in identity theft. Medical malpractice plaintiffs routinely must disclose similar information.

**B.     Even if Plaintiff had satisfied his burden, and even though he offers to disclose his name privately, he still must proceed under his real name as a putative class representative.**

Plaintiff cites cases in which courts have found that defendants were not prejudiced because the plaintiffs offered to share their names privately, but those courts also ruled that the plaintiffs had established substantial privacy rights that outweighed the presumption of judicial openness.  Navy Seal 1, 2022 WL 520829, at *1 (religious beliefs/threats); Fla. Abolitionist, 2018 WL 2017535, at *1 (sex trafficking); Rickey Patel, 2020 WL 9073327, at *1 (same); S.G., 2014 WL 4637139, at *1 (HIV status); Provident Life, 176 F.R.D. at 468 (mental illness); ProHealth, 2023 WL 2760644, at *1 (generalized, speculative HHS statement).

Thus, a lack of prejudice is not a substitute for the plaintiff rebutting the presumption of judicial openness. To the contrary, even if Plaintiff had satisfied his burden to establish a substantial privacy right that outweighs the presumption of judicial openness, and even though he offers to disclose his name privately, he still must proceed under his real name as a putative class representative.

In re Ashley Madison Customer Data Security Breach Litigation, MDL No. 2669, 2016 WL 1366616, at *1 (E.D. Mo. Apr. 6, 2016) was a putative data breach class action brought by users of an adult "cheating website." The court ruled that the plaintiffs' privacy concerns rose "above the level of mere embarrassment or harm to reputation," and noted the plaintiffs' willingness to share their names with the defendant privately. Id. at *4. The court thus ruled that class members "need not be specifically identified by name in order to be part of the litigation." Id.

With respect to class representatives, however, the court ruled:

> Class representatives have a fiduciary duty to fairly represent the entire class, and generally receive an incentive award as compensation for work done on behalf of the class. Given the importance of the role of class representative, the Court will require Plaintiffs to disclose their identities so that the public, including the putative class members they seek to represent, know who is guiding and directing the litigation.

Id. (citations omitted).

The Ashley Madison court relied on Michael v. Bloomberg L.P., No. 14-2657, 2015 WL 585592, at *4 (S.D.N.Y. Feb. 11, 2015), in which the court ruled:

It is true that plaintiff has offered to disclose his true identity to Bloomberg, as long as it remains under seal – somewhat mitigating Bloomberg's potential prejudice in investigating plaintiff's claims.  But this unorthodox arrangement still runs against the public's traditional right of access to judicial proceedings, and may also preclude class members from properly evaluating the qualifications of the class representative.

In Michael v. Charter Communications., Inc., No. 17-cv-1242, 2017 WL 2833404, at *2 & *4 (E.D. Mo. June 30, 2017), the court denied the putative class representative leave to proceed under a pseudonym, even though he already had disclosed his name to the defendant.  Relying on Ashley Madison and Bloomberg, the court ruled "that the general presumption in favor of public disclosure of a plaintiff's identity is even stronger in a case which is pled as a putative class action, because the named plaintiff is purporting to represent other members of the public." Id. at *4.  It further ruled: "Even if there was some heightened interest in the privacy of the class members here, Plaintiff's status as the putative named plaintiff requires that he be the named plaintiff." Id. (emphasis in original).

Other federal courts have denied putative class representatives leave to proceed under pseudonyms for similar reasons.  B.L. v. Fetherman, No. 22-3471, 2023 WL 1818402, at 6* (D.N.J. Feb. 8, 2023) ("[I]t is quite plausible that parents . . . would like to know – and perhaps would be entitled to know – the name and identity of the proposed class representative purporting to challenge the curriculum on behalf of their children."); Sherman v. Trinity Teen Solutions, Inc., 339 F.R.D. 203, 206 (D. Wyo. 2021) ("[M]ost important, as the class representative, Plaintiff

has a fiduciary duty and obligation to vigorously prosecute the interests of the class.  In order to do so, the other class members should know who is representing them.") (citing <u>Ashley Madison</u>); <u>Doe v. Hartford Life & Accident Ins. Co.</u>, No. 05-2512, 2005 WL 8175595, at *2 (D.N.J. Dec. 15, 2005) ("[T]he fact that Doe seeks to become a representative of a class militates against use of a pseudonym.").

In <u>ProHealth</u>, which was a putative class action, the Wisconsin federal court stated that "there is virtually no prejudice on the other side because Doe has promised to reveal his true identity to ProHealth Care so it can adequately investigate his claims."  2023 WL 2760644, at *1.  The court did not consider, however, any special need for putative class representatives to name themselves.

In fact, the court did not consider the public interest at all, even though protecting "the public's legitimate interest in knowing all of the facts involved, including the identities of the parties" is the fundamental purpose of Rule 10(a). <u>Frank</u>, 951 F.2d at 322.  By failing to reach such a key issue, the <u>ProHealth</u> court only further illustrated the low bar that it set for granting an **<u>unopposed</u>** motion.

Here, Plaintiff is a putative class representative who is actively soliciting putative class members by publishing on the Internet a one-sided account of his claims against TGH.  (Exh. A).[1]  By improperly proceeding under a pseudonym without leave of court since January 19, 2023, Plaintiff has prevented: (1) putative

---

[1] https://lowey.com/cases/tampa-general-hospital-meta-pixel-investigation/

class members from vetting his qualifications, and (2) TGH from addressing his qualifications in its court filings and public statements.  This Court should head off any further prejudice by denying Plaintiff leave to proceed under a pseudonym.

It remains only to note that Ashley Madison raises two procedural issues that warrant this Court's consideration.  The first is that the court invited the class representatives to voluntarily dismiss without prejudice if they did not wish to proceed under their real names.  Ashley Madison, 2016 WL 1366616, at *5.  Here, this Court already has ruled that Plaintiff may not voluntarily dismiss without prejudice because of his declared intention to do so as a tactic to defeat federal jurisdiction.  (Dkt. 22).  TGH thus requests that this Court neither require nor permit dismissal without prejudice, which would allow the very tactic that it previously prevented by denying Plaintiff leave to voluntarily dismiss.

The second is that the Ashley Madison court preemptively authorized putative class members to "proceed, without publicly disclosing their names . . . if and when a class is certified."  2016 WL 1366616, at *5.  There is no need for this Court to do the same here at this early stage, when it has not yet set a briefing schedule for class certification.  The privacy rights of putative class members are fundamentally different here than in Ashley Madison because mere association with a "cheating website" is severely stigmatizing, whereas mere association with

the TGH website is not stigmatizing at all.   What that means for putative class members here, however, is a question that this Court need not reach at this time.

## <u>CONCLUSION</u>

This Court should deny the Motion because Plaintiff has failed to satisfy his heavy burden to establish that he is entitled to proceed under a pseudonym.

Dated: May 30, 2023                                    Respectfully submitted,

*/s/ Jon T. Gatto*
Jon T. Gatto
Florida Bar No.: 547328
jgatto@carltonfields.com
D. Matthew Allen
Florida Bar No.: 866326
mallen@carltonfields.com
Joseph W. Swanson
Florida Bar No.: 29618
jswanson@carltonfields.com
Simon M. Gaugush
Florida Bar No.: 440050
sgaugush@carltonfields.com
Austin M. Eason
Florida Bar No.: 105102
aeason@carltonfields.com
**CARLTON FIELDS**
Post Office Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Attorneys for Defendant

## **<u>CERTIFICATE OF SERVICE</u>**

We certify that on May 30, 2023, we electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, thereby serving this document on all attorneys of record in this case.

Respectfully submitted,

*/s/ Jon T. Gatto*
Jon T. Gatto





# Tampa General Hospital Meta Pixel Investigation

Tampa General Hospital Meta Pixel Investigation

Submit Your Information

A Meta owned tracking tool called "Meta Pixel," installed on hospital websites and patient portals collects and sends patients' sensitive health information to Meta when patients interact with the websites to schedule an appointment. This information may have been used in connection with Meta's advertising practices.

The highly sensitive information sent to Meta includes details about the individuals' medical conditions, prescriptions, appointments, specific treatment, messages to health care providers, and personally identifiable information. **The hospitals affected include Tampa General Hospital.**

**If you are or were a patient of Tampa General Hospital and would like to learn more use the form below or contact us at investigations@lowey.com and someone will reach out to your shortly.**

**Name** *

|  |  |
|---|---|
| First | Last |

**Email** *

**State** *

**Phone**

▼  (201) 555-0123

**News**

☐ I wish to receive news and updates.

**Comment or Message** *

Submit



More than 50 years of landmark results.

## Practices

Commodities

Antitrust

Health Care

Securities

Whistleblower

Commercial

## Firm

About

Team

News

Security Manual

Our Team

## Contact Us

**Office:** (914) 997-0500

**Company:** info@lowey.com

New York

Pennsylvania

Copyright © Lowey Dannenberg, P.C. 2022  |  Privacy Policy | Disclaimer